UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| E.F., a minor, by and through her parent and natural guardian, Marie Farrell; A.S., a minor, by and through his parent and natural guardian, Mariya Pustovalova; L.P., a minor, by and through his parent and natural guardian, Jennifer Petri., on behalf of themselves and a class of those similarly situated, and Disability Rights New York, | No. 21 CV 419 (LDH/RML) |

Plaintiffs,

-against-

THE NEW YORK CITY DEPARTMENT OF
EDUCATION; THE CITY OF NEW YORK;
MEISHA PORTER, in her official capacity
Chancellor of the New York City Department of
Education.,

Defendants.

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................1

II.     BACKGROUND .............................................................................................3

III.    STANDARD OF REVIEW ..............................................................................5

IV.     LEGAL ARGUMENT ....................................................................................6

        A.     Exhaustion Is Not Required...............................................................6

               1.     Exhaustion Would Be Futile in this Putative Class Action Seeking
                      Systemic Remedies for Systemic Violations...........................................6

               2.     The Gravamen of Plaintiffs' Complaint Centers on Unlawful
                      Segregation and Not the Denial of FAPE................................................8

        B.     Challenges to DRNY's Standing Are Not Properly Before This Court..............14

               1.     DRNY Has Standing to Bring This Action. .........................................14

        C.     Plaintiffs Allege Sufficient Facts to Grant the Relief Sought...........................18

               1.     Plaintiffs' Complaint Satisfies Federal Rule of Civil Procedure
                      8(a)(2) Requirements. ......................................................................18

               2.     Plaintiffs Have Stated a Claim Under the ADA, Section 504, the
                      IDEA, and the NYCHRL. ..................................................................18

V.      CONCLUSION ............................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                               **Page(s)**

*Abraham P. v. Los Angeles Unified Sch. Dist.*,
2017 WL 4839071 (C.D. Cal. Oct. 5, 2017) .................................................... 11

*Auer v. Robbins*,
519 U.S. 452, 461 (1997) ............................................................................. 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................... 18

*Coleman v. Newburgh Enlarged City Sch. Dist.*,
503 F.3d 198 (2d Cir. 2007) ........................................................................... 6

*Davis v. Shah*,
821 F.3d 231 (2d Cir. 2016) ...................................................................... 8, 12

*Disability Advocates, Inc. v. Paterson*,
598 F. Supp. 2d 289 (E.D.N.Y. 2009) .......................................................... 20

*Disability Rights New York v. The State of New York, et al.*,
1:17-cv-0695 .................................................................................................. 16

*Donahue v. Asia TV USA Ltd.*,
208 F. Supp. 3d 505 (S.D.N.Y. 2016) ............................................................. 5

*Ellenberg v. New Mexico Military Inst.*,
478 F.3d 1262 (10th Cir. 2007) ..................................................................... 13

*Faulkner v. Beer*,
463 F.3d 130 (2d Cir. 2006) ............................................................................ 5

*Fisher v. Okla. HealthCare Auth.*,
335 F.3d 1181-82 (10th Cir. 2003) .................................................................. 8

*Fry v. Napoleon Community Schools*,
137 S. Ct. 743 (2017) ...........................................................................*passim*

*G.T. v. Kanawha Cnty. Schs.*,
Civ. Action, 2020 U.S. Dist. LEXIS 125528 (S.D.W.V. Jul. 16, 2020) ............ 10

*Georgia Advoc. Off. v. Georgia*,
447 F. Supp. 3d 1311 (N.D. Ga. 2020)................................................. 10, 13, 20

*Gladstone Realtors v. Vill. of Bellwood*,
441 U.S. 91 (1979) ........................................................................................ 15

*Goldstein v. Coughlin*,
  83 F.R.D. 613 (1979) ................................................................................... 15

*Hamadou v. Hess Corp.*,
  915 F. Supp.2d 651 (S.D.N.Y. 2013) ........................................................... 23

*Handberry v. Thompson*,
  446 F.3d 335 (2d Cir. 2006) .......................................................................... 7

*Helen L. v. DiDario*,
  46 F.3d 325 (3d Cir. 1995) .......................................................................... 24

*Henrietta D. v. Bloomberg*,
  331 F.3d 261 (2d Cir. 2003) ............................................................. 18, 21, 23

*Hunt v. Washington State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ..................................................................................... 14

*J.L. on behalf of J.P. v. New York Dep't of Educ*,
  324 F.Supp.3d 455 ......................................................................................... 6

*J.S. ex rel. N.S. v. Attica Cent. Sch.*,
  386 F.3d 107 (2d Cir. 2004) ........................................................................... 6

*J.S., III by & through J.S. Jr. v. Houston Cty. Bd. of Educ.*,
  877 F.3d 979 (11th Cir. 2017) ................................................................... 9, 13

*Joseph S. v. Hogan*,
  561 F. Supp. 2d 280 (E.D.N.Y. 2008) ................................................... *passim*

*K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*,
  725 F.3d 1088 (9th Cir. 2013) ................................................................. 13, 20

*K.M. v. Tustin Unified Sch. Dist.*,
  725 F.3d 1033 (9th Cir. 2013) ...................................................................... 18

*Kalliope R. ex rel. Irene D. v. New York State Dep't of Educ.*,
  827 F. Supp. 2d 130 (E.D.N.Y. 2010) ........................................................ 7, 18

*Kramer v. Time Warner Inc.*,
  937 F.2d 767 (2d Cir. 1991) ..................................................................... 18, 22

*Lawton v. Success Acad. Charter Schs.*,
  323 F. Supp. 3d 353 (E.D.N.Y. 2018) ........................................................... 11

*Loeffler v. Staten Island Univ. Hosp.*,
  582 F.3d 268 (2d Cir. 2009) .......................................................................... 18

*M.G. v. New York City Dep't of Educ.*,
  15 F. Supp. 3d 296 (S.D.N.Y. 2014) .................................................................. 7

*Martinez v. Cuomo*,
  459 F. Supp. 3d 517 (S.D.N.Y. 2020) ............................................................... 12

*McIntyre v. Eugene Sch. Dist. 4J*,
  976 F.3d 902 (9th Cir. 2020) .............................................................................. 12

*Nat'l Motor Freight Ass'n v. U.S.*,
  372 U.S. 246 (1963) ........................................................................................... 15

*Naughton v. Bevilacqua*,
  458 F. Supp. 610 (D.R.I. 1978), *aff'd on other grounds*, 605 F.2d 586 (1st Cir.
  1979) .................................................................................................................... 15

*Olmstead v. L.C.*,
  527 U.S. 581, 598 (1999) ................................................................................... 20

*Olmstead v. L.C. ex rel. Zimring*,
  527 U.S. 581 (1999) ..................................................................................*passim*

*Parent/Professional Advocacy League v. City of Springfield*,
  934 F3d 13 (1st Cir. 2019) ...................................................................... 9, 10, 16, 17

*Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*,
  288 F.3d 478 (2d Cir. 2002) .............................................................................. 7

*Ramirez-Marin v. JD Classic Builders Corp.*,
  2017 WL 4358759 (E.D.N.Y. Sept. 30, 2017) ................................................. 23

*Rubenstein v. Benedictine Hosp.*,
  790 F. Supp. 396 (N.D.N.Y. 1992) ................................................................... 15

*Scaggs v. New York Dep't of Educ.*,
  2007 WL 1456221 (E.D.N.Y. May 16, 2007) .................................................... 6

*T.M. v. Cornwall Cent. Sch. Dist.*,
  752 F.3d 145 (2d Cir. 2014) .............................................................................. 25

*Trautz v. Weisman*,
  846 F. Supp. 1160 (S.D.N.Y. 1994) .................................................................. 15

*United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*,
  517 U.S. 544 (1996) ................................................................................ 14, 15, 17

iv

*United Spinal Ass'n v. Bd. of Elections in City of New York*,
  882 F. Supp. 2d 615 (S.D.N.Y. 2012), *aff'd sub nom. Disabled in Action v.
  Bd. of Elections in City of New York,* 752 F.3d 189 (2d Cir. 2014)......................22

*United States v. State of Georgia*,
  461 F. Supp. 3d 1315 (N.D. Ga. 2020)..............................................................9

*United States v. Vazquez*,
  145 F.3d 74 (2d Cir. 1998)................................................................................5

*Virginia Office for Protection and Advocacy v. Stewart*,
  563 U.S. 247 (2011)........................................................................................16

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
  549 F.3d 100 (2d Cir. 2008)........................................................................5, 18

*Woods v. Tompkins Cty.*,
  2016 WL 5107120 (N.D.N.Y. Sept. 20, 2016)................................................12

**STATUTES, RULES & REGULATIONS**

28 C.F.R. § 35.130(d) ..................................................................................9, 19

20 U.S.C. § 1400(d)(1)(a)...............................................................................25

20 U.S.C. § 1412(a)(5)(A)...............................................................................25

20 U.S.C. § 1415(f)(3)(E)(i), (i)(2)(A) ..............................................................8

20 U.S.C. § 1415(l)..........................................................................................13

29 U.S.C. § 794...............................................................................................19

42 U.S.C. § 10801, et seq................................................................................15

42 U.S.C. § 10805(a)(1)(B) of the PAIMI Act ..........................................16, 17

42 U.S.C. §§ 12132 ...................................................................................19, 21

42 U.S.C. § 15001, et seq................................................................................15

Americans with Disabilities Act, § 504 of the Rehabilitation Act .......................*passim*

Developmental Disabilities Assistance and Bill of Rights Act of 1975, 42 U.S.C.
  § 6000, et seq................................................................................................15

Fed. R. Civ. P 8(a)(2)......................................................................................18

Fed. R. Civ. P. 12(b)(6)....................................................................................5

Fed. R. Civ. P. 23(a) ...................................................................................................23

Fed. R. Civ. P. 25(d) .....................................................................................................1

Local Civil Rights Restoration Act of 2005, n. Y.C ..................................................18

N.Y. Exec Law § 558(b) .............................................................................................15

**OTHER AUTHORITIES**

132 Cong. Rec. H2642-02 (daily ed. May 13, 1986) ..................................................17

S. Rep. No. 103-120 (1993), reprinted in 1994 U.S.C.C.A.N. 164 ............................17

U.S. Dep't of Justice, *Statement of the Department of Justice on Enforcement of
the Integration Mandate of Title II of the Americans with Disabilities Act and
Olmstead v. L.C.* (last updated Feb. 25, 2020),
https://www.ada.gov/olmstead/q&a_olmstead.htm .....................................................19

## I. <u>Introduction</u>

This class action lawsuit challenges the New York City Department of Education's ("DOE's") unjustified segregation of Staten Island students with disabilities in a separate and unequal educational program known as "District 75." In their Complaint, ("Compl.," ECF No. 1), Plaintiffs, who include Disability Rights New York ("DRNY") and three Staten Island students with disabilities seeking relief on behalf of themselves and all similarly situated allege that Defendants[1] violate the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), the Individuals with Disabilities Education Act ("IDEA"), and the New York City Human Rights Law ("NYCHRL") by operating and funding a separate school district that unnecessarily segregates the Named Plaintiffs and the Plaintiff Class. Defendants fail to ensure that appropriate educational services and supports that Staten Island District 75 students need are available in the DOE's traditional neighborhood public schools, also called "community schools." With such educational services and supports, the Named Plaintiffs and Plaintiff Class could be educated in the DOE's community schools if they choose.

Defendants' motion to dismiss mischaracterizes Plaintiffs' Complaint as relating only to alleged deficiencies in special education services for the Named Plaintiffs, thereby requiring exhaustion of their claims through the IDEA's administrative "due process" procedures. Not so. Plaintiffs' claims center on the unjustified segregation, or serious risk of same, of a putative class of Staten Island District 75 students with disabilities due to Defendants' failure to provide appropriate and legally required services and supports in the DOE's community schools. Under

---

[1] Defendants include the New York City Department of Education (the "DOE"), the City of New York (the "City"), and Meisha Porter in her official capacity as the Chancellor of the NYC DOE.  Although former Chancellor Richard Carranza was originally named as a defendant, Federal Rule of Civil Procedure 25(d) provides that when a government official named in his official capacity departs from office, his successor "is automatically substituted as a party."

well-established precedent in this Circuit, exhaustion is excused as futile here, because the IDEA's administrative process cannot provide the systemic relief Plaintiffs seek on behalf of the putative class. Further, because the gravamen of Plaintiffs' ADA, Section 504, and NYCHRL claims are premised on these laws' "integration mandate" and not the provision of a free appropriate public education ("FAPE"), exhaustion is not required.

Defendants also inappropriately attack organizational Plaintiff DRNY's standing. First, this issue is not properly before the court because Defendants failed to raise organizational standing as a grounds for moving to dismiss in either of their pre-motion conference letters. Regardless, as the designated federal Protection and Advocacy system (P&A) for New York, DRNY has been specifically bestowed representational standing on behalf of individuals with disabilities by Congress.

Defendants' attacks on Plaintiffs' well-pled allegations as insufficient also fail. Plaintiffs allege that they and others like them could and wish to be educated in Staten Island community schools if Defendants provided a continuum of disability-related services and supports in these integrated settings. At this stage, such allegations are more than sufficient to state a claim under the ADA, Section 504, the IDEA, and the NYCHRL. Defendants criticize a number of Plaintiffs' allegations, including their evidentiary bases. But they acknowledge, as they must, that the validity and exact contours of Plaintiffs' claims and requested remedies are to be determined after discovery has taken place at a later stage of litigation. *See* Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("Def. Br."), at 2. Contesting whether Plaintiffs have proven their claims at this stage is improper.

Finally, Defendants also mischaracterize the relief sought by Plaintiffs and the Plaintiff Class. Nowhere in the Complaint do Plaintiffs state they are seeking to abolish District 75. Nor

do they seek to duplicate all District 75 programs in all of the DOE's community schools nor mandate a community based placement for every child. What Plaintiffs are seeking is the adoption and implementation of legally required "practices, policies, and procedures [that will] ensure that all students in the Plaintiff Class have the *opportunity* to be educated in the most integrated setting appropriate to their needs." Compl. ¶ 293(v) (emphasis added). These allegations are more than sufficient at this stage of litigation.

For these reasons, and in light of the deference owed to Plaintiffs' Complaint under the Federal Rules, Plaintiffs respectfully request that the Court deny Defendants' motion in full.

## II.   Background

Defendants fund and administer District 75, a separate, citywide school district for special education students deemed to have "significant challenges," including autism spectrum disorders, significant cognitive delays, sensory impairments, emotional disturbances, and multiple disabilities. Compl. ¶¶ 59, 61. Approximately 2,000 Staten Island students with disabilities are placed in a network of District 75 schools and classrooms, in which they "spend all or almost all of their school day segregated from students without disabilities." *Id.* ¶¶ 65, 74. Many Staten Island District 75 students, including Named Plaintiff E.F., attend stand-alone District 75 facilities, which are entirely separate campuses attended only by students with disabilities. *Id.* ¶¶ 75; 153. Other District 75 students are placed in co-located schools, which are housed on Staten Island community school campuses but are entirely administered by District 75, and are often placed in trailers with separate entrances and otherwise completely cut off from community schools. *Id.* ¶ 68, 77. At both co-located and stand-alone District 75 schools, students have minimal or no interaction with their peers without disabilities, which denies them the many, well-established benefits of an integrated educational placement. *Id.* ¶¶ 74, 85, 91, 109.

Defendants fund District 75 through an entirely separate funding stream, with a budget and administrative structure that is kept separate from that of the rest of the DOE's schools.  *Id.* ¶¶ 60–61. Resources for educating Staten Island District 75 students are dedicated primarily to segregated facilities, thereby limiting the capacity of Staten Island community schools to serve these students. *Id.* ¶¶ 61, 83, 101. Many District 75 students are automatically excluded from attending a neighborhood community school because of their disability classification or because they require a service or support that is only available in a District 75 placement. *Id.* ¶ 70. Once placed in District 75, Staten Island students are often unable to return to a community school, both because of the inferior education they receive in District 75 and because Staten Island community schools are ill-equipped to provide the necessary supports and services to District 75 students who could otherwise be integrated into community settings. *Id.* ¶¶ 70–73, 81–82.

 The Named Plaintiffs include E.F., who currently attends a separate District 75 school, *id.* ¶ 20, and A.S. and L.P., who are at significant risk of being placed in District 75.  *Id.* ¶¶ 21–23. These Plaintiffs and the Plaintiff Class could be educated in Staten Island community schools if Defendants provided the appropriate, legally required supports and services needed to accommodate these students' disability-related needs in the DOE's community schools, rather than funneling these resources into District 75, a segregated school district. Id. ¶¶ 101–03. Many parents of Staten Island District 75 students would prefer and would choose for their children to attend community schools if effective services and supports were available.  *Id.* ¶ 116. However, families often feel forced to accept a District 75 placement because they are told their child can only receive the services they need in these segregated settings. *Id.* ¶¶ 108, 117–18.

Defendants have been aware of the need to systemically reform District 75 since at least 2008, when, at Defendants' request, the Council of the Great City Schools ("CGCS"), one of the

leading national organizations supporting urban education, issued the report: "Improving Special Education in New York City's District 75." *Id.* ¶¶ 9–10, 123–28; Seelenfreund Decl. Ex 1. In particular, CGCS found that "the isolation of students [is] more pronounced in the New York City school system than in other major urban school systems ... " *Id.* ¶¶ 10, 125; Seelenfreund Decl. Ex 1 (also noting that District 75 students "are often cut off from their non-disabled peers and segregated from programs and services that could be beneficial."). In highlighting that "the isolation of expertise in many District 75 programs has left the larger system of schools without many of the supports and some of the expertise to provide these students with what they need," CGCS put Defendants on notice of the need to increase the capacity of community schools to serve District 75 students. *Id.* ¶ 126; Seelenfreund Decl. Ex 1. Yet Defendants still have not provided the Plaintiff Class Members and Named Plaintiffs the opportunity for integration.

### III.  <u>Standard of Review</u>

When considering a challenge to the sufficiency of claims under Fed. R. Civ. P. 12(b)(6) the Court accepts as true all material allegations of the complaint and construes the complaint in favor of the complaining party. *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (*citing United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir. 1998)); *see Donahue v. Asia TV USA Ltd.,* 208 F. Supp. 3d 505, 512 (S.D.N.Y. 2016). "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

## IV. **Legal Argument**

A.   **Exhaustion Is Not Required.**

1.   *Exhaustion Would Be Futile in this Putative Class Action Seeking Systemic Remedies for Systemic Violations*

It is well established that "the exhaustion requirement does not apply "in situations in which exhaustion would be futile." *Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 205 (2d Cir. 2007) (internal citations omitted) (exhaustion futile in situations where "adequate remedies are not reasonably available" or where "the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process."). In particular, courts in this circuit routinely excuse exhaustion in cases, like this one, where plaintiffs allege that defendants have committed systemic violations. *See, e.g, J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 113 (2d Cir. 2004) (collecting cases where exhaustion not required because "plaintiffs' problems could not have been remedied by administrative bodies"; *see also Scaggs v. New York Dep't of Educ.*,  2007 WL 1456221, at *7 (E.D.N.Y. May 16, 2007) ("[T]he Second Circuit has consistently distinguished the problem of inadequate educational programs and facilities, which constitute systemic violations to be addressed by the federal courts, from technical questions of how to define and treat individual students' learning disabilities, which are best addressed by administrators.");*J.L. on behalf of J.P. v. New York Dep't of Educ,* 324 F.Supp.3d 455, 464–65.

Here, Plaintiffs challenge a systemic practice, namely that, "by unnecessarily segregating students with disabilities from their peers without disabilities, Defendants violate the ADA, Section 504, the IDEA, and NYCHRL, which all require public school districts to provide programs, services, and activities to students with disabilities in the most integrated setting appropriate." Compl. ¶ 14.  While hearing officers are authorized to address deficiencies in an

individual student's Individualized Education Plan ("IEP"), *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487 (2d Cir. 2002),[2] "they have no power to alter the City's policies or general practices and cannot issue prospective relief," *M.G. v. New York City Dep't of Educ.*, 15 F. Supp. 3d 296, 305 (S.D.N.Y. 2014); s*ee also Handberry v. Thompson,* 446 F.3d 335, 343 (2d Cir. 2006) (exhaustion futile in class action case challenging prison's wholesale failure to provide required educational services to student-inmates). In *M.G.* plaintiffs sought a declaration that a set of DOE policies, such as the blanket refusal to include certain services on students' IEP's, were unlawful, as well as changes to these policies moving forward. *M.G.,* 15 F. Supp. 3d at 594. Similarly, Plaintiff here seek a declaration that Defendants' policies and practices, including providing services and supports to the Plaintiff Class Members and Named Plaintiffs only in segregated school facilities instead of in community school settings, are unlawful and must be remedied. Compl. ¶ 293.

Defendants contend the Plaintiffs seek only relief specific to E.F. and that such relief must be obtained through the IDEA's administrative procedures. However, the focus of Plaintiffs' Complaint is not, and will not be, on E.F. alone. Rather, the crux of this Court's inquiries will be on whether Defendants unlawfully deny a class of students with disabilities who could be educated in the DOE's community schools the opportunity to do so with appropriate, legally required services and supports. *See Kalliope R. ex rel. Irene D. v. New York State Dep't of Educ.*, 827 F. Supp. 2d 130, 139 (E.D.N.Y. 2010) ("Thus, the focus of this case will be on [defendants'] alleged policy, not whether a particular IEP is appropriate for a particular

---

[2]"[T]he administrative system is uniquely well suited to review the content and implementation of IEPs [] and to determine what changes, if any, are needed." *Polera*, 288 F.3d at 487.

student."). Defendants' focus on E.F.'s individual circumstances is misplaced because describes a "uniformly applied, official policy," Def. Br. at 15, thereby rendering exhaustion futile.

2.  *The Gravamen of Plaintiffs' Complaint Centers on Unlawful Segregation and Not the Denial of FAPE.*

Additionally, the IDEA's administrative exhaustion requirement does not apply to Plaintiffs' ADA, Section 504, or NYCHRL claims, because those claims center on the unjustified segregation, or serious risk of such segregation,[3] of the Plaintiff Class Members and Named Plaintiffs as opposed to the adequacy of educational services they receive. The IDEA provides for federal court review of administrative determinations of whether a student with a disability receives a FAPE. *See* 20 U.S.C. § 1415(f)(3)(E)(i), (i)(2)(A). In 2017, the Supreme Court held that exhaustion of the IDEA's administrative remedies is unnecessary for claims not centered on the IDEA's "core guarantee" of FAPE, which the court defined as "the yardstick for measuring the adequacy of the education that a school offers to a child with a disability." *Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 749–50, 54 (2017); *also id.* at 755 (plaintiffs are the "the master of the claim"; courts must examine both complaint and remedy sought in determining whether exhaustion applies).

Plaintiffs' ADA, Section 504, and NYCHRL claims center on Defendants' failure to ensure that the Plaintiff Class Members and Named Plaintiffs may participate in the DOE's programs, services, and activities in the most integrated setting appropriate, not the adequacy of education offered within those segregated facilities. *See e.g.*, Compl. ¶¶ 258, 267, 286, 290. These claims do not challenge whether the Plaintiff Class Members and Named Plaintiffs have

---

[3] Plaintiffs have standing to state a claim for disability discrimination if they are "at serious risk of institutionalization or segregation" but have not yet been institutionalized.  *Davis v. Shah*, 821 F.3d 231, 262 (2d Cir. 2016). "[I]ndividuals who face the possibility of segregation may challenge state policy under the ADA "without first submitting to institutionalization." *Fisher v. Okla. HealthCare Auth.*, 335 F.3d 1181-82 (10th Cir. 2003).

received FAPE. As discussed more fully *infra*, the ADA and Section 504 mandate that individuals with disabilities be educated in the "most integrated setting appropriate to their needs." 28 C.F.R. § 35.130(d); *see also Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597 (1999) (unjustified segregation of individuals with disabilities violates the ADA). As courts have made clear, the unwarranted segregation of students with disabilities "implicate those further, intangible consequences of discrimination" contemplated in *Olmstead* that could result from isolation, such as stigmatization and deprivation of opportunities for enriching interaction with fellow students. *See J.S., III by & through J.S. Jr. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 987 (11th Cir. 2017) (holding that the unwarranted removal of a student with a disability from a general education classroom was not "merely a FAPE violation" because plaintiff' allegations involved disability discrimination claims under 504 and the ADA); *United States v. State of Georgia*, 461 F. Supp. 3d 1315, 1325 (N.D. Ga. 2020) (exhaustion not required because plaintiff claims "unlawful stigmatization [and] deprivation of advantages that come from integrated learning environments"). Similarly, Plaintiffs allege that the "Defendants have violated the rights of the Named Plaintiffs and the Plaintiff Class by failing to educate them in the most integrated setting appropriate." Compl. ¶ 43. The remedy Plaintiffs seek, a plan to ensure that all students in the Plaintiff Class have the opportunity to be educated in Defendants' community schools, see Compl. ¶ 293, is intended to remedy the consequences of discrimination identified in *Olmstead*, and not the adequacy of instruction offered within segregated District 75 schools. Plaintiffs have made it clear through their allegations of structurally based discrimination practices and systemic relief sought that exhaustion does not apply to their ADA, Section 504, and NYHRL claims.

Defendants rely on the First Circuit's holding requiring administrative exhaustion in *Parent/Professional Advocacy League v. City of Springfield*, 934 F3d 13 (1st Cir. 2019), a

decision that is not binding on this Court, without addressing any of the cases that reach contrary holdings. Other courts have not found the reasoning in *Springfield* persuasive. *See Georgia Advoc. Off. v. Georgia*, 447 F. Supp. 3d 1311, 1326 (N.D. Ga. 2020) (where plaintiff students with disabilities challenged alleged unlawful segregation in network of separate schools and classrooms, and holding that, "[s]ince stigmatization is the gravamen of the complaint, Plaintiffs did not have to exhaust their remedies under the IDEA."); *G.T. v. Kanawha Cnty. Schs.*, Civ. Action, 2020 U.S. Dist. LEXIS 125528, at *20 (S.D.W.V. Jul. 16, 2020) (allegations that students with disabilities in segregated classrooms experience "stigmatization and isolation from peers" that are "structural in nature, and . . . tinkering with individual students' IEPs or [behavior intervention plans] will not provide effective relief.  The Plaintiffs seek structural relief in the form of declaratory judgment, injunctive relief, and appointment of an independent monitor."). Notably, although both the *Georgia Advoc. Off.* plaintiffs and Plaintiffs here allege that they receive inadequate educational opportunities in their segregated schools and classrooms, Compl. ¶¶ 84–100, the crux of both complaints center on the students' unlawful and unnecessary removal from community school settings, "depriv[ing] them of the benefits of learning with other students." *Georgia Advoc. Off.*, 447 F. Supp. 3d at 1325; *see also* Compl. ¶ 85 ("Staten Island District 75 students are denied the many positive benefits of being educated in classrooms with their peers without disabilities."). Just as exhaustion was not required for the *Georgia Advoc. Off.* plaintiffs challenging their unlawful segregation in a network of segregated schools, exhaustion should not be required here for Plaintiff Class Members and Named Plaintiffs challenging the same.[4]

---

[4]*Springfield* is also distinguishable because, unlike Plaintiffs here who proceeded straight to federal court, the plaintiff in that case "initially invoked the IDEA's formal procedures to handle his dispute," a factor that the *Fry* court instructed courts to consider when determining the gravamen of the relevant complaint. *Id*. quoting *Fry*, 137 S.

### a.     Both *Fry* Hypotheticals Indicate That Exhaustion Is Not Required.

Defendants contend that the answers to the *Fry* Court's two "clues" to determining whether the "gravamen" of a plaintiff's claims lie in FAPE are adverse to Plaintiffs, and therefore Plaintiffs' ADA, Section 504, and NYCHRL claims require exhaustion. *See* Def. Br. at 12 ("The Supreme Court in *Fry* sets two tests to determine the essential nature of the complaint: (1) had the alleged conduct occurred at a public facility that was not a school, could the student assert the same claim against the non-educational public facility; and (2) could an individual other than a student assert the same claim against the district? If the answer to both questions is yes, it is unlikely that the complaint relates to the provision of FAPE.") (citing *Fry*, 137 S. Ct at 757). However, both of these questions, in fact, demand an affirmative answer. Students would certainly have a claim against a public facility, such as a public summer camp or recreational center, for unnecessarily segregating them, including through denying them reasonable modifications that would enable their integration. *See Lawton v. Success Acad. Charter Schs.*, *Inc.*, 323 F. Supp. 3d 353, 362 (E.D.N.Y. 2018) ("[D]isabled children would have a claim against a public library that placed them on a list of excluded patrons, [and] used strict disciplinary rules to remove them on a daily basis[.]").[5]

Second, adults could, and routinely do, challenge their unjustified segregation at the hands of public entities. *See, e.g.*, *Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 292 (E.D.N.Y. 2008) ("Plaintiffs' allegations that individuals with mental illness are unnecessarily segregated in highly restrictive nursing homes, even though their needs could be met in a more integrated

---

Ct. at 757, 137 S. Ct. at 767 ("In particular, a court may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute . . . prior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE.").

[5] *See also Abraham P. v. Los Angeles Unified Sch. Dist.*, 2017 WL 4839071 at *4 (C.D. Cal.  Oct. 5, 2017) (claim of unnecessary segregation throughout educational experience similarly could be brought if child were placed in segregated setting at a theater).

setting, and that these individuals desire to reside in a more integrated setting, are adequate to state violations of the ADA and Section 504 under *Olmstead*."); *Woods v. Tompkins Cty.,* 2016 WL 5107120, at *4 (N.D.N.Y. Sept. 20, 2016) ("Plaintiff does plausibly allege that by not being provided a personal care aide, she is at risk of being institutionalized."); *Davis v. Shah*, 821 F.3d 231, 263 (2d Cir. 2016). Moreover, just as Plaintiffs here allege that Defendants are obligated to make reasonable accommodations to provide a meaningful opportunity for students to attend community schools, adults would have valid claims against an entity that failed to make the accommodations necessary to provide a meaningful opportunity to benefit from its services. *See Martinez v. Cuomo*, 459 F. Supp. 3d 517, 525 (S.D.N.Y. 2020) (ASL interpreters for coronavirus briefings required because "[t]he current accommodations [of closed captions] – however well-intentioned – simply do not provide meaningful access in the circumstances presented here."); *see also McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 916 (9th Cir. 2020) (applying *Fry* to student's ADA and Section 504 claims alleging illegal failures to implement emergency health protocol, and noting that "an adult at the school . . . could seek a similar accommodation . . . if such an accommodation is 'reasonable'"). Plaintiffs' claims resemble those of children and adults in non-school settings, providing further evidence that exhaustion is not required here.

   **b.**  **Plaintiffs' IDEA Claims Do Not Require Exhaustion of Their ADA, Section 504, and NYCHRL Claims.**

   Plaintiffs have properly alleged that Defendants' unnecessary segregation of Plaintiff Class Members and Named Plaintiffs violates the ADA, Section 504, and the NYCHRL, *see* Compl. ¶ 14, and the inclusion of distinct claims under all four statutes does not impact the inapplicability of exhaustion. The gravamen of Plaintiffs' ADA, Section 504, and NYCHRL "*Olmstead*" claims lies in Defendants' failures to ensure that the Plaintiff Class Members and Named Plaintiffs may participate in the DOE's programs, services, and activities in the most

integrated setting appropriate, and not in the denial of FAPE. As the *Fry* Court recognized, there is "some overlap in coverage" between the IDEA, 504, and the ADA, and seeking relief under the IDEA is not mutually exclusive with challenging the denial of FAPE. *See Fry*, 137 S. Ct. at 756 (holding that a student who uses a wheelchair could bring suit against a school regarding ramp access under the IDEA because such inaccessibility involves "educational consequences" but that the gravamen of such claims would not be the denial of FAPE); *see also J.S., III by & through J.S. Jr.*, 877 F.3d at 987 ("Although this claim [challenging a student's unlawful removal from general education classroom] could be brought as a FAPE violation for failure to follow J.S.' IEP, we conclude that it is also cognizable as a separate claim for intentional discrimination under the ADA and § 504.").

As courts have recognized, the IDEA is not the exclusive avenue by which students can vindicate their federal rights, and the IDEA explicitly states that it shall not limit students' rights under other statutes. *See Fry*, 137 S. Ct. at 748, (citing 20 U.S.C. § 1415(l), stating "Important as the IDEA is for children with disabilities, it is not the only federal statute protecting their interests"); *Ellenberg v. New Mexico Military Inst.*, 478 F.3d 1262, 1281 (10th Cir. 2007). Indeed, Congress intended that the IDEA "coexist[] with the ADA and other federal statutes, rather than swallowing the others." *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1097 (9th Cir. 2013); *Georgia Advoc. Off.*, 447 F. Supp. 3d at 1324 ("Some conduct is prohibited by both the ADA and the IDEA."). Plaintiffs assert that the Plaintiff Class Members and Named Plaintiffs have not received special education services in the least restrictive setting ("LRE"), in violation of the IDEA, but the crux of Plaintiffs' ADA, Section 504, and NYCHRL claims is their unjustified segregation; exhaustion is therefore unnecessary.

**B.**      **Challenges to DRNY's Standing Are Not Properly Before This Court.**

Pursuant to sections III (A) (1) (a) (3), and (4) of this Court's Individual Practice Rules, Defendants are barred from disputing DRNY's representational standing in the instant motion. Neither of the Defendants' pre-motion letters raises DRNY's standing as is required by this Court's rules of practice. Def. Ltr., ECF No. 27; *see also* Def. Ltr., ECF No. 33. Accordingly, Defendants' improperly raised contentions should be disregarded. Nevertheless, if the court wishes to address this additional issue at this juncture, it is clear that the challenge must fail.

1.      *DRNY Has Standing to Bring This Action.*

Congress has specifically authorized DRNY to bring actions on behalf of individuals with disabilities to fulfill its statutorily mandated duties as the P&A for New York. This is the essence of Congressionally authorized representational standing. Contrary to Defendants' contention, DRNY is not asserting "associational standing" in this case as set forth in *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977). The Supreme Court in *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, clearly stated that "associational standing" is only but one strand of "representational standing." 517 U.S. 544, 557 (1996).

a.      **Congress Can Authorize Representational Standing.**

The Supreme Court has unequivocally held that representational standing based on particular relationships, especially those authorized by Congress, is sufficient to rebut any presumption that litigants may not assert the rights of absent third parties.

> [W]e recognized in *Allen v. Wright*, 468 U. S., at 751, that "the general prohibition on a litigant's raising another person's legal rights" is a "judicially self-imposed limi[t] on the exercise of federal jurisdiction," not a constitutional mandate. Indeed, the entire doctrine of "representational standing," … rests on the premise that in certain circumstances, particular relationships (recognized either by common-law tradition or by statutes) are sufficient to rebut the background presumption (in the statutory context, about Congress's intent) that litigants may not assert the rights of absent third parties.

*United Food and Commercial Workers Union Local 751*, 517 U.S. at 557. Congress may, "by legislation, expand standing to the full extent permitted by Art. III..." thus permitting litigation by those asserting the legal interests of third parties rather than their own. *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100–20 (1979); *See also Nat'l Motor Freight Ass'n v. U.S.*, 372 U.S. 246, 247 (1963) (appellants had standing where statute authorized representation of members who were aggrieved by the contested order).

      **b.**      **DRNY Has Representational Standing.**

      DRNY is the P&A system in New York State. N.Y. Exec Law §558(b).  As a number of courts in this Circuit and elsewhere have concluded, through the Developmental Disabilities Assistance and Bill of Rights Act of 1975 ("DD Act"), 42 U.S.C. § 6000, et seq. (repealed and replaced by 42 U.S.C. § 15001, et seq.) and the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI") Act 42 U.S.C. § 10801, et seq., Congress bestowed representational standing to P&A systems in furtherance of their mandated duties as the P&A through the plain language of the statutes. *See, e.g., Naughton v. Bevilacqua*, 458 F. Supp. 610, 616, n. 3 (D.R.I. 1978), *aff'd on other grounds*, 605 F.2d 586 (1st Cir. 1979), (pursuant to the DD Act, the P&A "need not show injury to the agency in order to initiate suit or intervene on behalf of an injured party. The live case or controversy requirement of Art. III is satisfied by injury to [a person with a disability]."); *Goldstein v. Coughlin*, 83 F.R.D. 613, 614–15 (1979)**;** *Rubenstein v. Benedictine Hosp.*, 790 F. Supp. 396, 408-409 (N.D.N.Y. 1992) (PAIMI Act authorized P&A contractor standing to pursue legal remedies for persons with mental illness even though contractor had not personally suffered an injury in fact); *Trautz v. Weisman*, 846 F. Supp. 1160, 1163 (S.D.N.Y. 1994) (PAIMI Act clearly conferred standing on the P&A contractor to seek injunctive relief on behalf of the adult home residents; had "Congress merely

15

intended for [P&A] to act as advocates on behalf of mentally individuals, (sic) it would not have included (a)(1)(B) in addition to (a)(1)(C).").[6]

In *Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247 (2011), the Supreme Court held that the DD Act and PAIMI Act explicitly provide the P&A system with specific authority to pursue legal remedies on behalf of people with disabilities.

> The Acts also require that a P & A system have authority to "pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of" its charges. § 15043(a)(2)(A)(i); see § 10805(a)(1)(B). And in addition to pressing its own rights, a P & A system may "pursue administrative, legal, and other remedies on behalf of" those it protects. § 10805(a)(1)(C); see § 15044(b).

*Virginia Office for Protection and Advocacy*, 563 U.S. at 251.

Defendants' analysis of the First Circuit's decision in *Springfield* to challenge DRNY's representational standing in this action is notably inconsistent with that court's decision, which expressly acknowledged that Congress bestowed standing on P&A systems to bring suit on behalf of people with disabilities. Based on the plain language of the PAIMI Act, "there are suits [the P&A system] can bring on behalf of individuals with mental illness." *Springfield*, 934 F.3d at 34–35. To the extent the *Springfield* court premised its ultimate decision that the Massachusetts "P&A" did not have standing due to "prudential considerations," that decision is inconsistent with the plain language of the DD and PAIMI Acts, which make no mention of any prudential barriers to suits by P&As; the legislative histories of the Acts, which make clear that

---

[6]The Magistrate *in Disability Rights New York v. The State of New York, et al.*, 1:17-cv-0695, Report and Recommendations, Doc. No. 39 (E.D.N.Y. 6/14/19) reached a contrary holding on the issue of P&A representational standing, to which DRNY filed objections. The District Court has yet to rule on this issue.

Congress did not intend such prudential barriers[7]; and as shown in the numerous decisions cited above.

Even under a prudential analysis, the present case is factually distinguishable. The *Springfield* court asserted that resolution of the case would require individualized proof of each constituent's claim based on its conclusion that there was no overarching policy affecting all class members. *Id* at 30, 34-35.[8] Here, Plaintiffs' claims do not require fact-specific analysis. The Plaintiff Class Members and Named Plaintiffs challenge the policies, operation, and funding of a segregated school district that forecloses the option of community integration. Compl., ¶ 1-8, 15, 257–58. These policies and practices impact the Plaintiff Class Members and Named Plaintiffs equally and do not require an analysis of individual educational plans.

In sum, the doctrine of representational standing is premised on the ability of litigants to represent the rights of third parties. *United Food & Commercial Workers Union Local 751*, 517 U.S. at 557. Thus, the components of standing (injury, causation, redressability) alleged in the Complaint pertain to the third parties that DRNY has been statutorily mandated to protect—people with disabilities. So long as Plaintiffs have pled that at least one person with a disability has Article III standing, DRNY has Article III standing. Here, Named Plaintiffs E.F., L.P, and A.S. and others like them, are students with disabilities with standing to bring this action. Therefore, DRNY likewise has standing to bring this action.

---

[7] When the DD Act was amended in 1994, Congress made clear that no statutory amendment addressing P&A standing was needed because the current statute was clear on its face:  "…P&A systems have standing to pursue legal remedies to ensure the protection of and advocacy for the rights of individuals with developmental disabilities." S. Rep. No. 103-120 at 39 (1993), reprinted in 1994 U.S.C.C.A.N. 164, 202-03. Additionally, when discussing the language of what is now 42 U.S.C. § 10805(a)(1)(B) of the PAIMI Act, Rep. Waxman stated that"[i]t is also clear that the conferees do not intend for questions of standing or jurisdiction to limit the effectiveness, range, or forums in which P&A agencies can work" 132 Cong. Rec. H2642-02 (daily ed. May 13, 1986).

[8] The *Springfield* court's other main concern was whether the plaintiffs there were attempting to circumvent the IDEA's exhaustion requirement.  For the reasons explained above, neither the Named Plaintiffs nor the Plaintiff Class needs to exhaust administrative remedies. *See* Supra IV(A)(2).

**C.** **Plaintiffs Allege Sufficient Facts to Grant the Relief Sought.**

1. *Plaintiffs' Complaint Satisfies Federal Rule of Civil Procedure 8(a)(2) Requirements.*

Plaintiffs satisfy Federal Rule of Civil Procedure 8(a)(2) requirements by stating a claim showing Plaintiffs are entitled to relief. To survive a motion to dismiss, "a complaint must allege a plausible set of facts sufficient to raise a right to relief above the speculative level." *See Kalliope R. ex rel. Irene D.*, 827 F.Supp.2d at 135. "This standard does not require 'heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *See Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). Further, the "court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). To the extent Defendants raise any disputes of fact, as they have here, it would be improper to address those disputes at this stage in the litigation. *See e.g., W.R. Huff Asset Mgmt. Co.*, 549 F.3d at 106.

2. *Plaintiffs Have Stated a Claim Under the ADA, Section 504, the IDEA, and the NYCHRL.*

a. **Plaintiffs Allege Sufficient Facts to State a Claim Under the ADA, Section 504, and the NYCHRL. [9]**

Plaintiffs' complaint alleges that Defendants have discriminated against the Plaintiff Class Members and Named Plaintiffs in violation of the ADA and Section 504.[10] Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability,

---

[9] Plaintiffs adequately allege that Defendants have violated the NYCHRL in addition to the ADA and Section 504. The NYCHRL prohibits disability discrimination in places of public accommodation and offers significantly broader protections than similarly worded federal law, meaning the ADA and Rehabilitation Act constitute only "a floor below which the City's Human Rights law cannot fall." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (quoting The Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85, § 1 (2005)).

[10] Although there are differences between the ADA and Section 504, *see, e.g.*, *K.M. v. Tustin Unified Sch. Dist.*, 725 F.3d 1033, 1098 (9th Cir. 2013), claims under both laws are generally "treated identically." *See Joseph S.*, 561 F. Supp. 2d at 289 (*citing Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).

be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by *any* such entity." *See* 42 U.S.C. §§ 12132 (emphasis added). Section 504 applies to recipients of federal financial assistance. Both the ADA and Section 504 require that when a public entity provides services to individuals with disabilities, it does so "in the most integrated setting appropriate to their needs," 28 C.F.R. § 35.130(d); 29 U.S.C. § 794, which is the "setting that enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible." 28 C.F.R. § 35.130(d).

### i. Plaintiffs Adequately Allege that Defendants Violate the ADA's and Section 504's Integration Mandates.

As discussed above, the crux of Plaintiffs' ADA and Section 504 claims lies in their unjustified segregation from their peers without disabilities in the DOE's community schools as a result of the Defendants' administration of a segregated school district. The Supreme Court addressed the ADA's "integration mandate" in *Olmstead*, 527 U.S. at 587. At issue in that case was "whether the proscription of discrimination may require placement of persons with disabilities in community settings rather than institutions." *Id.* The Court held that "unjustified isolation…is properly regarded as discrimination based on disability" under Title II. *See id* at 597.

The *Olmstead* court delineated a three-factor test for analyzing whether individuals with disabilities must receive services in a community setting. *See id.* at 587; *see also* U.S. Dep't of Justice, *Statement of the Department of Justice on Enforcement of the Integration Mandate of Title II of the Americans with Disabilities Act and Olmstead v. L.C.* (last updated Feb. 25, 2020), https://www.ada.gov/olmstead/q&a_olmstead.htm (under *Olmstead*, public entities are required to provide community-based services to persons with disabilities when "(1) such services are appropriate; (2) the affected persons do not oppose community-based treatment; and (3)

community-based services can be reasonably accommodated, taking into account the resources available to the entity and the needs of others" who are receiving services).[11]   Plaintiffs satisfy *Twombly*'s plausibility standard at the pleading stage when they allege the unnecessary segregation of individuals who could and wish to be served in a more integrated setting with reasonable modifications such as the provisions of services and supports. *See e.g.*, *Joseph S.*, 561 F. Supp. 2d at 289–90. Plaintiffs have stated such claims here[12]. *See* Compl. ¶¶ 102, 113, 116.

Defendants contend that Plaintiffs' ADA and Section 504 claims are flawed because Defendants' "relevant" professionals have recommended placement for E.F. in District 75.  Def. Br. at 18. "Many courts, however, have found that Olmstead claims require no state professional's determination." *Georgia Advoc. Off.*, 447 F. Supp. 3d at 1323 (citing cases, and agreeing that "it would be illogical to make plaintiffs suing a state rely on an opinion from that state's professionals").[13] Plaintiffs here allege that the Plaintiff Class Members and Named Plaintiffs can be educated in their neighborhood community schools, which is the most integrated setting, with appropriate legally required services and supports. *See e.g.*, *Id*; Compl. ¶¶ 2-6, 59, 90, 153, 232, 257. No more is required to plead a valid *Olmstead* claim.

---

[11] The views of the DOJ on the meaning and application of Title II are entitled to deference in federal courts. Tustin, 725 F.3d at 1100 ("'An agency's interpretation of its own regulation is controlling unless plainly erroneous or inconsistent with the regulation.'") (quoting Auer v. Robbins, 519 U.S. 452, 461 (1997)); see also Olmstead v. L.C., 527 U.S. 581, 598 (1999) ("[T]he well-reasoned views of the agencies implementing a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.") (internal quotations omitted).

[12] Defendants fundamentally misunderstand the meaning of "unjustified isolation" and "most integrated setting appropriate" as defined by the ADA. This Court has explicitly stated that "[i]nquiring simply whether individuals with disabilities have any opportunities for contact with non-disabled persons ignores the most integrated setting and the fullest extent possible language of the regulations." *See Disability Advocates, Inc. v. Paterson*, 598 F. Supp. 2d 289, 321 (E.D.N.Y. 2009). Thus, because this Court has given guidance as to the meaning of "isolation" in the context of the ADA, there is no need for Defendants to rely on the "Webster's New World Thesaurus" definition, Def. Br. at 20-21.

[13] *See also Joseph S. v. Hogan*, 561 F. Supp. 2d at 291 (holding that "it is not clear whether *Olmstead* even requires a specific determination by any medical professional that an individual with [disabilities] may receive services in a less restrictive setting, or whether that just happened to be what occurred in *Olmstead*") (emphasis in original).

Further, Defendants cannot defend their unlawful segregation of District 75 students by relying on the fact that IEP teams channel students into the separate network they have created. Compliance with IDEA procedures does not require a dismissal of Olmstead claims. *See e.g.* Georgia Advoc. Off., 447 F. Supp. 3d at 1323–24.

ii.    **Plaintiffs Adequately Allege That Defendants Deny Plaintiffs Meaningful Access to Their Programs and Services.**

In the same vein as their claims regarding the integration mandate, Plaintiffs' complaint sufficiently alleges that Defendants violate the ADA by denying the Plaintiff Class Members and Named Plaintiffs meaningful access to their services, programs, and activities. *See e.g.,* Compl. ¶¶ 258, 267.  Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity..." 42 U.S.C. § 12132.  Plaintiffs have alleged that by segregating Plaintiff Class Members and Named Plaintiffs in Staten Island District 75 schools and classrooms, Defendants deny them the benefits provided in Staten Island community schools. Chief amongst those benefits is the opportunity to learn in an integrated placement alongside students without disabilities, *see, e.g.*, Compl. ¶ 109, meaning that Defendants cannot provide meaningful access to all of their services in a segregated setting. Plaintiffs further allege that Defendants deny them access to services and programs that are provided in community schools, including extracurricular activities, facilities, and sufficiently rigorous and appropriately tailored academic instruction. *See e.g.*, Compl. ¶¶ 8, 76–99, 135–167.

Courts have unequivocally established that to "assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir.2003) (internal citations omitted). Plaintiffs allege that with reasonable accommodations such as expanding the menu of services available in

community schools, the Plaintiffs and Class Members could attend such schools and have access to the services, programs, and activities afforded to students without disabilities. Compl. ¶ 48.

### iii.   Defendants' Factual Challenges to Plaintiffs' Claims Are Improper.

Defendants' improper attempts to rebut Plaintiffs' validly pled allegations with disputed facts beyond the four corners of the complaint, and to paint Plaintiffs' claims as "conclusory" and unsupported by a "factual record," are improper at the motion-to-dismiss stage and should not be considered. *See e.g.*, *Kramer v. Time Warner Inc.*, 937 F.2d at 773.

Plaintiffs are also not required at this stage to demonstrate that the relief they seek "is not a major alteration to the fiscal and programmatic scheme for special education in New York…[or] will not hurt other special education students," Def. Br. at 18; *see e.g.*, *Joseph S.* 561 F. Supp. at 292.  Whether providing appropriate services and supports to the Plaintiff Class in the DOE's community schools would be either a "fundamental alteration" or "undue burden" cannot be determined at this stage; such affirmative defenses require a factual showing by Defendants. *See e.g.*, *Joseph S.* 561 F. Supp. at 293 (holding that "it would be inappropriate to dismiss plaintiffs' ADA and Section 504 claims [at the pleading stage]…because defendants bear the burden of establishing 'fundamental alteration' as a defense.").

Further, Plaintiffs' burden at this stage to identify a reasonable modification to Defendants' policies, practices, and procedures that will permit the Plaintiff Class Members and Named Plaintiffs to be educated in the most integrated setting appropriate, is "hardly insurmountable." *United Spinal Ass'n v. Bd. of Elections in City of New York*, 882 F. Supp. 2d 615, 626 (S.D.N.Y. 2012), *aff'd sub nom. Disabled in Action v. Bd. of Elections in City of New York,* 752 F.3d 189 (2d Cir. 2014). Plaintiffs have alleged a facially plausible modification — the provision of appropriate, legally required services and supports in community settings — that

would rectify Defendants' unjustified segregation of the Plaintiff Class Members and Named

Plaintiffs. They have therefore satisfied their burden to articulate the reasonable modification

Defendants must make, particularly at the motion-to-dismiss stage. *See Henrietta D.*, 331 F.3d at

280 ("It is enough for the plaintiff to suggest the existence of a plausible accommodation, the

costs of which, facially, do not clearly exceed its benefits and that, once the plaintiff has done

this, she has made out a prima facie showing that a reasonable accommodation is available, and

the risk of nonpersuasion falls on the defendant.").

Likewise, arguments regarding the suitability of class certification in this action are

improper on a motion to dismiss. This is because "[u]ntil a motion for class certification is made,

attacks on the sufficiency of Plaintiff's class allegations are premature." *See Ramirez-Marin v.*

*JD Classic Builders Corp.*, 2017 WL 4358759, at *4 (E.D.N.Y. Sept. 30, 2017) *(citing Hamadou*

*v. Hess Corp.,* 915 F. Supp.2d 651, 669 (S.D.N.Y. 2013). Nevertheless, Plaintiffs have

sufficiently pled all elements required by Fed. R. Civ. P. 23(a) for an action to proceed as a

certified class. The complaint alleges that: (1) The Plaintiff Class is so numerous that joinder of

all members is impracticable because the Defendants' enrollment data indicates that almost

2,000 students with disabilities attend a Staten Island District 75 placement;(2) There are

questions of law and fact common to the Plaintiff Class because all class members are, or are at

significant risk of, being affected in the same manner by the unnecessary segregation in the same

system-wide network of Staten Island District 75 schools, in violation of the ADA, Section 504,

the IDEA, and the NYCHRL; (3) The individual Named Plaintiffs' claims typify the claims of

the Plaintiff Class because, due to Defendants' policies, practices, and procedures, all named

Plaintiffs have been, or are at significant risk of being, denied their legal rights to receive an

appropriate education in the most integrated setting appropriate for them; and (4) the Named

Plaintiffs will fairly and adequately represent the class. *See e.g.*, Compl. ¶¶ 35–41. Therefore, arguments challenging the proposed class allegations are improper to raise at this juncture.

Further, Defendants mischaracterize the relief sought. In this case, Plaintiffs are not seeking to "abolish District 75 Schools" or "remake the continuum of services," Def. Br. at 1 and 2, for students with disabilities. Rather, Plaintiffs seek to compel the Defendants to develop a "remedial plan that includes new practices, policies, and procedures to ensure that all students in the Plaintiff Class have the opportunity to be educated in the most integrated setting appropriate to their needs." *See e.g.*, Compl. ¶¶ 15, 47, 127, 293.

### iv.   Neither the ADA Nor Section 504 Requires a Finding of Purposeful Discrimination.

Defendants incorrectly apply *Ashcroft* by stating that "respondents must plead sufficient factual matter to show that petitioners adopted and implemented the policies at issue not for a neutral investigative reason but for the purpose of discriminating." Def. Br. at 19.   No discriminatory animus is necessary for cases only seeking injunctive relief under the ADA and Section 504. *See Joseph S.* 561 F. Supp. at 290; *see also Helen L. v. DiDario*, 46 F.3d 325 (3d Cir. 1995) ("[E]vidence of discriminatory animus is not required to establish and ADA or Section 504 claim.").   Nor will courts "read into Title II a new requirement that Plaintiff must prove a 'specific act or policy'" that causes Defendants' discrimination. *See Joseph S. v. Hogan, 561 F. Supp. 2d* ("[U]nnecessary segregation of individuals with [disabilities] is discrimination per se and a violation of the ADA; no demonstration of differential treatment between individuals with [disabilities] and those without is required").

The complaint adequately alleges that Defendants' failure to provide Staten Island District 75 students with disabilities the opportunity to attend community schools is unlawful discrimination under the ADA. *See e.g.*, Compl. ¶¶ 7, 134–259.   Therefore, Plaintiffs have met

their burden to allege an *Olmstead* violation. *See e.g.*, *Lawton*, 323 F. sup. 3d at 362 (finding that unnecessary segregation of individuals with disabilities states a sufficient claim under ADA). Plaintiffs have sufficiently alleged claims in violation of *Olmstead*'s "integration mandate" and thus should survive a motion to dismiss.

> b.   **Plaintiffs Allege Sufficient Facts to State a Claim Under the IDEA.**

The complaint also sufficiently alleges that Defendants have discriminated against Plaintiff Class Members and Named Plaintiffs in violation of the IDEA. The IDEA obligates Defendants to provide a FAPE to students with disabilities in the LRE, the setting in which they can learn alongside their peers without disabilities to the maximum extent appropriate to their needs. *See* 20 U.S.C. § 1412(a)(5)(A); 20 U.S.C. § 1400(d)(1)(a). The Second Circuit has held that "a disabled student's least restrictive environment refers to the least restrictive educational setting consistent with that student's needs, not the least restrictive setting that the school district chooses to make available." *See e.g.*, *T.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 161–62 (2d Cir. 2014). Here, Plaintiffs adequately allege that Defendants deny them the supports and services needed to educate Plaintiff Class Members and Named Plaintiffs in community schools alongside their peers without disabilities to the maximum extent appropriate. Instead, Defendants operate and fund a segregated service system such that more than 2,000 students are receiving services in segregated District 75 settings, which Plaintiffs allege is not the least restrictive environment appropriate to their needs. *See e.g.*, Compl. ¶¶ 277–78.

Plaintiffs' Complaint is well pled and should survive a motion to dismiss.

## V.   <u>Conclusion</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss in full.

Dated: August 24, 2021
        New York, New York

Respectfully submitted,

*Emily Seelenfreund*

_____

Emily Seelenfreund
Ptahra Jeppe
Stuart Seaborn
Disability Rights Advocates
655 Third Avenue, 14th Floor
New York, NY 10017

Lewis Bossing
Ira Burnim
The Bazelon Center for Mental Health Law
1090 Vermont Avenue NW, Suite 220
Washington, DC. 20005-4900

Julie Michaels Keegan
William Tronsor
Disability Rights New York
725 Broadway #450
Albany, NY 12207

Pete Baldwin
Faegre Drinker Biddle & Reath LLP
1177 6th Avenue, 41st Floor
New York, NY 10036

Michael Crosson
Faegre Drinker Biddle & Reath LLC
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103 USA

Gerald Hartman
The Law Offices of Gerald Hartman
3607 Whispering Lane
Falls Church, VA 22041
*Attorneys for Plaintiffs*